IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JANE DOE, individually and as Next Friend of JANIE DOE, MINOR CHILD, | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No. 4:25-cv-02778 |
| DEER PARK INDEPENDENT SCHOOL DISTRICT, | § § § § | |
| *Defendant*. | § | |

## DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Defendant Deer Park Independent School District ("DPISD" or the "District") files this Reply to Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss, as follows:

1. Plaintiffs' Response misrepresents a number of the claims and arguments they made in their original Petition. Replying to the issues slightly out of order, Plaintiffs state that "Jane Doe brings this action *solely* in her representative capacity as next friend of her minor child…." (Dkt. 7, p. 3 (emphasis added)). This is incorrect. Plaintiffs captioned the lawsuit "JANE DOE, individually and as Next Friend of JANIE DOE, MINOR CHILD," restates that in their opening paragraph (Petition, p. 1), and then restates it again in their "Parties" section (Petition, p. 2, ¶ 4). The District obviously does not have a problem with Jane Doe acting as next friend for her minor child, but Jane Doe lacks standing to assert claims "Individually" in this lawsuit (based on the injuries that she alleges were suffered by her child).

2. Plaintiffs next argue that "Defendant's reliance on governmental immunity under Texas law is misplaced, as Title IX is a federal civil rights statute with its own waiver of sovereign immunity for federally funded institutions." (Dkt. 7, p. 3). The District never said that it was immune from Plaintiffs' Title IX claim. (*See* Dkt. 5, pp. 5-7). Instead, the District argued that it

was immune from the *eight* (depending on how you count) different tort causes of action that the Plaintiffs asserted in their Petition. (*See* Petition, pp. 4-7). Plaintiffs appear to concede (through lack of any argument to the contrary) that the District would be immune to any tort claims asserted against them, so those claims should be dismissed.

3.  With regards to damages, although the District agrees with the Plaintiffs that *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S.Ct. 1562 (2022) itself was not a Title IX case, *Cummings* ruled that emotional distress damages are not available under federal statutes passed pursuant to the Spending Clause, which would include Title IX. At least one court in this district has already agreed that "District courts in this circuit apply Cummings to Title IX claims." *Jane Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 2025 WL 1678080, at *4 (S.D. Tex. 2025). Plaintiffs make no effort to respond to the Spending Clause argument. Plaintiffs do argue that "this is not an issue suitable for Rule 12 dismissal." (Dkt. 7, p.9 ). Why? Dismissal of a claim under Rule 12(b)(6) is proper where there is a lack of a cognizable theory of recovery. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). If a certain type of damages is not available under a specific statute as a matter of law, then dismissal of that damage claim under Rule 12(b)(6) is entirely suitable – and doing so at the beginning of a lawsuit may properly reset the Plaintiffs' expectations as to what relief they might receive from the lawsuit, which can at a minimum be helpful in any mediation. There is no discovery nor further fact development that would impact this issue.

4.  Plaintiffs end their Response with "In the event the Court agrees with Defendant's arguments, Plaintiffs request an opportunity to conduct discovery and address any pleading deficiencies in the complaint." While the District does not object to a chance to replead, discovery before doing so is improper. Numerous courts around the country have rejected similar attempts to engage in "plausibility discovery," particularly when the defendant has challenged the

sufficiency of a complaint under *Iqbal* and *Twombly*. *See*, *e.g.*, *Mujica v. AirScan Inc.*, 771 F.3d 580, 593, n.7 (9th Cir. 2014) ("To the extent that any of those decisions suggests that courts retain discretion to permit discovery whenever a plaintiff has failed to satisfy Rule 8's plausibility standard, it is simply incompatible with *Iqbal* and *Twombly*."); *Vega v. Davis*, 572 Fed.Appx. 611, 616 (10th Cir. 2014) (rejecting plaintiff's argument that the motion to dismiss should be denied due to his "lack of access to relevant information"); *Carter v. DeKalb Cnty., Ga.*, 521 Fed.Appx. 725, 728 (11th Cir. 2013) (holding that a plaintiff who failed to allege plausible claims against defendants was not entitled to discovery because "discovery follows the filing of a well-pleaded complaint. It is not a device to enable the plaintiff to make a case when his complaint has failed to state a claim." (internal quotation marks omitted)); *Persian Gulf Inc. v. BP W. Coast Prod. LLC*, 225 F. Supp. 3d 1178, 1180 (S.D. Cal. 2016) ("The unambiguous directive in *Iqbal* and *Mujica* does not allow the court discretion to order pre amendment plausibility discovery. The Plaintiffs are not entitled to discovery in order to allege sufficient facts to 'nudge its claim across the line from conceivable to plausible.'")

5. These cases are consistent with how this Court and other district courts in the Fifth Circuit have addressed the issue of plausibility discovery. In *Jones v. Nueces County, Texas*, 2012 WL 3528049 (S.D. Tex. 2012), this Court considered § 1983 excessive force and retaliation claims brought by a pretrial detainee, who alleged that a prison guard had slammed him against the wall and kicked him several times after a heated discussion. Although the plaintiff alleged that the excessive force arose out of a policy or custom of the County, the County responded that the Complaint contained mere conclusions or recitations of elements of claims rather than creditable facts, with which the Court agreed. The plaintiff then argued that he needed time to conduct discovery to figure out if the County had a policy of allowing excessive force, but the Court said "No":

> Federal practice does not allow this. Jones' "plead first and discover if there are supporting facts later" is exactly the problem that the Supreme Court sought to remedy in *Twombly* and *Iqbal*. The case proceeds to discovery only if the complaint contains enough facts to give rise to a reasonable expectation that discovery will reveal evidence of the elements of the claim.

*Id*. at *4 (citing *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 258 (5th Cir. 2009)). The Court then dismissed the excessive force claim against the County, finding that the allegations in the Complaint were insufficient under the *Twombly/Iqbal* test. *See also Mohamed v. Irving Indep. Sch. Dist.*, 300 F.Supp.3d 857, 879-80 (N.D. Tex. 2018). As in the above cases, Plaintiffs should not be allowed to engage in plausibility discovery here.

6. Returning to the Plaintiffs' primary Title IX claim, Plaintiffs point to no facts pled that would have suggested that school officials knew about anything other than the allegation that the bus driver "tickled" Janie Doe – which while inappropriate, would have been insufficient to place the DPISD administration on notice at that time of the possibility that Yarborough was sexually abusing or assaulting Janie Doe. *See Iqbal*, 556 U.S. at 678 (plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."). In a similar case:

> Plaintiffs also cite incidents witnessed by Domenic Botolino ("Botolino"), a teacher at the Brackett School from 1997–2001. Plaintiffs note that Botolino saw D'Agostino, on multiple occasions, hold her students' hands and walk down the hall surrounded by her female students while her male students "straggled along behind." Botolino also witnessed D'Agostino tickling one of her female students. And at a teacher's meeting, Botolino, as union representative, stated "that teachers should keep their hands to themselves."
>
> Based on this information, this court finds that Penta did not have "actual notice" that D'Agostino was subjecting female students "to harassment severe enough to compromise the victim's ... educational opportunities."

*Doe v. D'Agostino*, 367 F. Supp. 2d 157, 166 (D. Mass. 2005). *See also Dale v. White County, Georgia School District,* 238 Fed. Appx. 481 (11th Cir. 2007) (insufficient notice, where it was reported to the principal that female students massaged the teacher's feet; the teacher leaned over students to touch and hug them; and the teacher allowed female students to lie with their heads

resting against his outstretched legs.[1]); *Doe v. Northside Indep. Sch. Dist.*, 884 F.Supp.2d 485, 497 (W.D. Tex. 2012) (finding no actual knowledge of abuse despite allegations that teacher had "boundary" issues, hugged plaintiff, and gave chest bumps); *Does v. Se. Delco Sch. Dist.*, 272 F. Supp. 3d 656, 670-671 (E.D. Pa. 2017) (allegations that teacher hugged students and once briefly held a student's hands in his lap near his penis failed to "suppl[y] notice that Hochschwender posed an obvious and substantial risk to his students.").

7. The police report that Plaintiffs attach to their Response does not establish that the behavior of the bus driver about which school officials may have known was anything more serious than "tickling." While the description of the CAC interview appears to confirm that the student eventually described more serious physical contact (Dkt. 7-1.p. 8), that interview occurred after the bus driver had left the District. Whatever the District learned from the report on May 25, 2023 (which is the primary focus of the police report, *see* Dkt. 7-1, p. 5) or any subsequent review of videos, there are no facts pled that would show that the student was subjected to known "pervasive" harassment, given that courts require a plaintiff to show that the school's alleged indifference to known peer harassment actually caused them to undergo further harassment. *See*, *e.g., Kollaritsch v. Mich. State Univ. Bd. of Trustees*, 944 F.3d 613, 623–24 (6th Cir. 2019), *cert. denied*, 141 S. Ct. 554 (2020); *Shank v. Carleton Coll.*, 993 F.3d 567 (8th Cir. 2021); *K.T. v. Culver- Stockton Coll.*, 865 F.3d 1054, 1057–58 (8th Cir. 2017). While other circuit courts more broadly impose Title IX liability based on single incidents of pre-notice peer harassment, they have required plaintiffs to allege that the school's actions made them "more vulnerable" to future, speculative harassment. *See*, *e.g.*, *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 171 (1st Cir. 2007), *rev'd and remanded on other grounds*, 555 U.S. 246 (2009); *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 273–

---

[1] The Eleventh Circuit opinion does not include the facts regarding the type of notice provided to the principal, but those facts from the district court's order are discussed in *Doe v. Sch. Bd. of Palm Beach Cty.*, No. 15-CV-80175, 2015 WL 4698462, at *5 (S.D. Fla. June 2, 2015).

74 (4th Cir. 2021), *cert. denied*, 143 S. Ct. 442 (2022).[2]  Here, there are no facts alleged that any subsequent harassment took place after the tickling was reported on May 25, 2023, and since the bus driver was no longer at the District after that, there are no allegations that any specific actions by the District made the student "more vulnerable" to future, speculative harassment.

8.  Plaintiffs do allege, based on the police report, that the tickling behavior was reported to at least some teachers and the principal at some point prior to May 25, 2023 (although details are lacking). (Dkt. 7, p. 7).  They then allege that "[i]nstead of acting, the District allegedly told the perpetrator to 'stop'." (*Id*. at p. 8).  With all due respect, that is acting.  In *Doe v. Dallas ISD*, the Fifth Circuit concluded that believing that a teacher did not engage in teacher-on-student sexual harassment claim but warning that teacher to stop doing whatever they were doing was not deliberate indifference, even when the teacher subsequently abused other students:

> Patrick interviewed J.H., spoke with his mother, spoke with J.H.'s teacher, spoke with McGrew and warned him either that he would be "dealt with" if the accusations were founded or that he should avoid acting in a way that could be misconstrued. She concluded, in error, that J.H.'s allegation was not true, and her erroneous conclusion had tragic consequences. However, we cannot say on the facts before us that these actions, though ineffective in preventing McGrew from sexually abusing students, were an inadequate response to J.H.'s allegation.

*Doe v. Dallas Indep. Sch. Dist*., 220 F.3d 380, 388 (5th Cir. 2000)).  Telling the driver to stop was not deliberately indifferent, particularly given the vague nature (at that point in time) of the "tickling" that was known to school officials.

---

[2] The Fifth Circuit discussed in a recent Title IX student-on-student sexual assault case that it has not really taken a position on this split in circuits.  *See Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 342-43 (2022).

Respectfully submitted,

**THOMPSON & HORTON LLP**

By: /s/ Christopher B. Gilbert
    Christopher B. Gilbert
    Texas Bar No. 00787535
    cgilbert@thompsonhorton.com
    Morgan P. Beam
    Texas Bar No. 24101447
    mbeam@thompsonhorton.com

3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone: (713) 554-6714
Facsimile: (713) 583-8884

**ATTORNEYS FOR DEFENDANT DEER PARK INDEPENDENT SCHOOL DISTRICT**

## **CERTIFICATE OF SERVICE**

      On July 25, 2025, I electronically filed the foregoing document with the Clerk of the Court of the United States District Court for the Southern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all counsel and/or pro se parties of record electronically using the CM/ECF filing system or by any other manner authorized by Federal Rule of Civil Procedure 5(b)(2).

                                                    /s/ Christopher B. Gilbert
                                                  Christopher B. Gilbert